*The administration of the Goods of* JOSEPH MOREAU.

*The Guardianship of* FANNY *and* ALETTA F. MOREAU, *infants.*

AN administrator, who was also general guardian for the infants next of kin, was a co-defendant with his wards in an action in the Supreme Court for the partition of real estate, and in that action a decree was had directing payment to him of large sums out of his wards' shares of the proceeds of sale. Held, that under the circumstances the decree of sale and payment was not such a settlement of the administrator's and guardian's accounts, as precluded the Surrogate from investigating and settling them.

CHARLES B. HART, *for the Administrator and General Guardian.*
CHARLES PRICE, *Special Guardian for Infants.*

JOHN B. MOREAU, general guardian of Fanny and Aletta F. Moreau (appointed by the Surrogate), having neglected to file his annual inventory and account for the year 1867, was cited by the Surrogate pursuant to statute. On the 27th of April, 1868, the guardian filed his accounts of the

estates of both infants, in which he claimed a balance as due him from his ward Fanny, of $1,772.53, and a balance as due him from his ward Aletta F. of $49.66. The guardian accompanied his account of Aletta F. Moreau's estate with the following statement: "The said Aletta F. Moreau has the same property now as is enumerated and described in the account or inventory filed by me in January, 1867, in the Surrogate's office in New York, subject and liable as therein stated, except that the lots and premises on the southwest corner of the Bowery and Bayard street, in the city of New York, have been sold by a referee, under a judgment in partition of the Supreme Court in New York, but the deed therefor has not been delivered nor the purchase money paid or divided. By that judgment the sum of $2,572.61, with interest thereon from 14th February, 1868, is adjudged to be due to me and chargeable upon the share of the proceeds of the said sale, belonging to the said Aletta F. Moreau, and the said referee is directed by said judgment to pay the same to me out of the said proceeds of sale; and, on the payment thereof, the said property of the said Aletta F. Moreau will be relieved from a corresponding amount of liability, including her share of a mortgage for $500, on a lot in Ninety-eighth street, mentioned in the said account filed by me in January, 1867, as aforesaid.

"JOHN B. MOREAU."

A similar statement *mutatis mutandis*, accompanied the account of Fanny Moreau's estate.

The Surrogate again cited the guardian to account and show cause why he should not be removed. The guardian, thereupon, filed his account for the year 1868, which the Surrogate proceeded to examine in the month of February, 1869. In this, he charges the ward Aletta F. Moreau with the balance of $49.56, which stood against her in his last preceding account; and charges her with "one-half of amount due from the estate of Joseph Moreau,

her father, to John B. Moreau as administrator, $2,522.95, and interest thereon, $37.51, making a total of $2,610.12. He then credits her with "cash received from D. Hawley, referee, directed by the judgment of the Supreme Court in *Moreau* v. *Moreau*, to be paid, in full of the three items debit side of this account $2,610.12."

The guardian then adds: "The said Aletta F. Moreau has the same property now as is enumerated and described in former accounts, filed by me in the Surrogate's office, except that the lots and premises on the southwest corner of the Bowery and Bayard street, in the city of New York, have been sold by D. Hawley, Esq., as referee, under a judgment in partition of the Supreme Court in New York, in an action in which Peter J. Moreau and wife were plaintiffs, and John B. Moreau, Fanny Moreau and said Aletta F. Moreau were defendants. Amount of sale, $66,700. Amount of costs, disbursements, referee's fees, assessments, &c., $3,642.22, leaving $63,057.78. Said Aletta was entitled to one-sixth, namely, $10,509.63. By said judgment the said balance $49.66, of my last year's account against said Aletta, and the sum of $2,522.95, for one-half of the amount due to me from the estate of Joseph Moreau, deceased (said Aletta's father), as his administrator, making together $2,572.61, were adjudged to be chargeable to the share of said Aletta, and directed to be paid to me thereout, with interest from 14th February, 1868. On 5th May, 1868, the said referee paid me out of said Aletta's share of said proceeds of said sale, as directed by said judgment, $2,610.12, leaving the net balance of the share of said Aletta $7,899.51. The amount of $2,610.12 so paid to me, included her share of a mortgage for $500 on a lot in Ninety-eighth street, and my equitable interest in one-half of a lot in Hoboken. That net balance of her share, $7,899.51, has not been paid to me, but has been invested on bond and mortgage, and the interest thereon to 1st August, 1868, was paid to me by special order of the Supreme Court, and is credited to said Aletta.

"Joseph Moreau left only two children, Fanny and the said Aletta, and the share of each in his estate became liable to pay one-half (viz.: $2,522.95) of the amount (viz.: $5,045.89) for which the said estate was indebted to me as administrator.

"NEW YORK, *March* 6, 1869.

"JOHN B. MOREAU."

There was a similar statement in the account of Fanny Moreau's estate.

The Surrogate being dissatisfied with these accounts, appointed Charles Price, Esq., special guardian to examine them and care for the interests of the wards on this accounting, who reported to the Surrogate as follows:

"If the said John B. Moreau was administrator, he should have settled his accounts as such, or obtained an order of the Surrogate to pass the moneys of the estate into his hands as guardian. One acting in both capacities cannot pass from one hand to the other, or claim indemnity in either capacity at will. I cannot see how an administrator can pay himself without settling his accounts in the Surrogate's Court where he was appointed and qualified. The proctor for the general guardian claims that his accounts cannot be examined by the Surrogate, because the partition suit in the Supreme Court must be regarded as *res adjudicata*, and all parties are concluded thereby. If this view be deemed by the Surrogate to be correct, and he shall approve of this method of settling his guardian's accounts, then these accounts must be approved for the reason that there can be no review of them. But I do not suppose these proceedings will be considered as depriving the Surrogate of the duty and right to investigate the conduct of guardians appointed by him."

The Surrogate approved this report and ordered the general guardian to appear before him for examination in relation to the execution of his trusts as such guardian;

and he also ordered him to file an account of his proceedings as administrator.

Upon such examination, the guardian produced a copy of the judgment of the Supreme Court in *Moreau* v. *Moreau*, in partition, ordering sale of the premises corner Bowery and Bayard street, and finding the amount due to John B. Moreau from the infant Aletta F. and her sister as above stated.

The judgment recites as follows:

"It is adjudged   *   *   *   that the defendant, John B. Moreau, as administrator, &c., of Joseph Moreau, deceased (the father of the infant defendants Fanny Moreau and Aletta F. Moreau), has necessarily and properly paid debts of said deceased, and made advances for his estate, amounting on 14th February, 1868, to $5,045.89, and that there is no personal estate of the said deceased with which to pay the same, and that one-half thereof is chargeable to the share in said premises of the defendant Fanny, and the other half to the share in said premises of the defendant Aletta F. Moreau.

"And that the defendant John B. Moreau, as general guardian of the infant defendant Aletta F. Moreau, has necessarily and properly made advances for her in paying off her share of a mortgage on the premises in question, and in paying other expenses and charges of and against her estate, and for her support, maintenance and education, amounting on 14th February, 1868, to $49.66; and that the same is chargeable to and should be paid out of her share in said premises."

And it therefore directs the payment to be made by the referee out of such share to John B. Moreau. The accounts of John B. Moreau, as administrator of the goods of Joseph Moreau, deceased, having also been filed, by order of the Surrogate, Charles Price, Esq., was again appointed special guardian to examine the same, and, he having objected to them, they were referred to an auditor. The auditor reported to the Surrogate that the adminis-

trator had set up before him the judgment of the Supreme Court in the partition action, as a final settlement of his accounts as administrator, and had claimed that the same was a final and conclusive bar to any investigation of his accounts by the Surrogate, as to the items accounted for to the Supreme Court. Upon this reference before the auditor, the pleadings and proofs in the action of *Moreau* v. *Moreau* were produced and put in evidence.

THE SURROGATE. The question here is, whether an administrator, who is also the general guardian of the infants interested in the goods he is administering, can have a settlement of his accounts, both as administrator and as guardian, in a Court of Law, in an action for the partition of real estate, in which he and his wards are co-defendants; such settlement embracing, moreover, claims made by him against his intestate, arising out of personal transactions between himself and the intestate. I am called upon to respect such a judgment as precluding me from investigating what are certainly most suspicious circumstances, under which the property of these infants has, in a large degree, been taken from them and given over to their guardian, the administrator of their father's assets.

In the partition action, John B. Moreau filed an answer in which he, individually, claimed one-third interest in the real estate sought to be partitioned, and set up, also, that he was administrator of the goods of the father of these minors, and their general guardian; he claimed that, both as administrator of such goods and as guardian of such infants, he had made certain advances which should be reimbursed to him, out of the funds to be realized from the minors' shares on the sale. A guardian *ad litem* was appointed for the minors on this petition.

The sixtieth rule of the Supreme Court forbids the appointment of a guardian *ad litem* for infant defendants who is not their general guardian, or an attorney or officer of the Court, who is fully competent to understand

and protect their rights. In this action, it appears that the guardian *ad litem* appointed was not the general guardian of the infants, nor was he an attorney or officer of the Supreme Court, and he was obliged to appear by an attorney.

Upon the reference, one witness only, one Charles B. Moreau, was examined before the referee, and he testified as to the property, the heirs and their relationship. No testimony appears to have been taken before the referee to establish the claims which John B. Moreau set up against these minors, either as administrator, or as guardian, as an individual; yet these claims were allowed, and the attorney for the guardian *ad litem* consented in writing to the entry of the decree.

On the investigation before my auditor, the attorney for John B. Moreau testifies that these claims were established before the referee by the testimony of John B. Moreau himself, and by documentary evidence.

If the administrator himself proved his claims, it was done in violation of section 399 of the Code, so far as related to transactions had by him with deceased in his lifetime; and his proof would not have been evidence in a Surrogate's Court as to claims arising after death, under the provision of the statute which requires the production of vouchers (3 *R. S.*, *5th ed.*, *p.* 175, § 40), unless supported by a sworn voucher.

If it would have been error for the Surrogate to allow such a claim, can the administrator, by going into another tribunal, dispense with the needful proof? And can a guardian *ad litem* waive proof of a claim against the estate of his wards and consent to judgment without it?

The rule or principle is established in *Litchfield* v. *Burwell*, 5 *How. Pr. R.*, *p.* 345. "Neither the guardian *ad litem*, or any other person," says the learned justice, "has power to waive proof, nor any right without it to consent to a judgment. This is a rule of law that cannot be evaded, by consenting to use as testimony

what the law will not recognize as such, and the consent of the attorney for the guardian that what is here called testimony, but which does not rise to the dignity of a well authenticated rumor, should be received, does not justify the referee in acting upon it as evidence."

In respect to the claims of John B. Moreau, the record does not show that any testimony was offered in support of them on the partition reference, and none appears to have been taken by the referee. John B. Moreau's testimony, had it been taken, was inadmissible and incompetent; he could not testify to transactions between himself and the intestate in support of his own claims against the estate. No other witness, it would appear, was examined in support of them. Nor was he competent to produce documentary evidence, of which he was partly, if not altogether, the author.

The principle is too well settled to need argument that a bill or complaint cannot be taken as confessed against infants under any circumstances, nor their interests decreed away without an answer by their guardian *ad litem*, and on full proof. Every thing must be proved against infants. And the record must furnish proof to sustain a decree against them, whether the guardian *ad litem*, has answered or not.

The guardian *ad litem*, in the partition action, had put in an answer of general denial, and it therefore became necessary that full proof should have been given in support of the claims of this administrator, &c.; yet the record does not furnish a particle of evidence given in support of them.

But even conceding the regularity of the proceedings before the referee, a graver question remains behind. Had the Supreme Court jurisdiction in this case to give judgment in favor of one defendant against two other defendants? Mr. Justice Woodruff said, in *Tracy* v. *N. Y. Steam Faucet Company, E. D. Smith's Rep., p.* 325, that a judgment of this kind " is supposed to be warranted

by section 274 of the Code, which authorizes the Court to determine the ultimate rights of parties on each side, as between themselves." "It is doubtful," he continues, "whether it was intended to go further than the former practice in Chancery, in settling the rights of defendants as between each other, as in interpleader suits, suits for partition, suits filed to close a trust, suits brought for a distribution of a fund, suits brought for the purpose of settling conflicting claims, and the like, where it was within the proper scope and object of the action, as exhibited in the complaint, to bring these various or conflicting claims to an issue, and the determination of which was essential to the accomplishment of the very object sought by the bill itself."

Was the settlement of the accounts of an administrator and guardian, who was one of the parties, with his wards and *cestuis que trust*, as next of kin of his intestate, "within the proper scope and object of" this partition action "as exhibited in the complaint?" Was the award of these large sums of money to the guardian out of his wards' shares, "essential to the accomplishment of the very object" of the action? I think not; and I consider the decree of the Supreme Court, to use the language of Mr. Justice Campbell, in *Edsall* v. *Vandemark*, 39 *Barb.*, *S. C. R.*, *p.* 600, "was a fraud as against the infants, and should not be permitted to stand, even if the guardian *ad litem*, had been clothed with authority to make it."

With respect to John B. Moreau, as administrator, I must hold that he has brought himself under section 37 (33), 3 R. S., 5th ed., p. 175, which says: —

"No part of the property of the deceased shall be retained by an executor or administrator, in satisfaction of his own debt or claim, until it shall have been proved to and allowed by the Surrogate." His accounts must, therefore, be referred back to the auditor for investigation and report, without any reference to their alleged settlement in the Supreme Court.

As to his accounts as guardian, appointed by the Surrogate, I shall assert the jurisdiction of the Surrogate to investigate them. The Revised Statutes (3d vol., 5th ed., p. 245, § 36) say:

"Every Surrogate shall * * * file in his office all accounts and inventories (of guardians appointed by him) and shall examine all such * * *.

§ 37. "If, on such examination, the Surrogate shall be satisfied in any case that the interest of the ward requires * * * that such guardian should be removed * * * such Surrogate shall proceed against such guardian."

I shall accordingly cite the guardian, John B. Moreau, to show cause why he should not be removed from his guardianship. He is now under my injunction; and if he cannot show that his conduct in seeking and obtaining a settlement of his accounts in the forum to which he has resorted, was justifiable, honest and in good faith, he must be removed.